## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

KAREN S. JENKINS,          )
                                   )
      Plaintiff,              )
                                   )
vs.                            )    Case No. CIV-04-1113-F
                                   )
CLEMENTS FOODS CO., an     )
Oklahoma corporation         )
                                   )
      Defendant.           )

## <u>ORDER</u>

Defendant Clements Foods Co.'s Motion for Summary Judgment, filed September 2, 2005, is before the court.  (Doc. no. 36.)  Clements moves for summary judgment on all claims.  Plaintiff Karen S. Jenkins has responded to the motion, defendant has replied, plaintiff has sur-replied, and the motion is ready for determination.

<u>Background and Nature of Claims</u>

This action is brought by Ms. Jenkins against her former employer Clements Foods Co.   It is undisputed that at the time Ms. Jenkins was terminated, she worked for Clements as the Third Shift Sanitation Supervisor.  In that capacity, it was Ms. Jenkins' job to supervise the third shift crew, which worked nights, and to make sure that the plant was clean and sanitized before production began the next morning. (Def's und. fact no. 1.)[1]

In Count I of this action, Ms. Jenkins alleges gender discrimination under Title VII.  In Count II, she alleges gender discrimination under Oklahoma law.  In the

---

[1]All undisputed facts which are identified by number in this Order are supported by record evidence.

"Statement of Facts" section of the Complaint, which is incorporated in both counts, Ms. Jenkins alleges that she was discriminated against in two specific ways. First, she alleges that although Clements allowed male supervisors to participate in the hiring of their own staff, Ms. Jenkins was not allowed to hire her own staff for the crew which she supervised. (Complaint, ¶ 8.) Second, Ms. Jenkins alleges that she was terminated "on the pretext" that "her crew had not performed its cleaning responsibilities on a production line machine," despite the fact that she "had never been disciplined for this infraction prior to being terminated" and although "[i]t was a practice and policy of the Defendant that male supervisors were disciplined for infractions rather than being terminated." (Complaint, ¶ 9.)

Although the mention of "pretext" in the latter allegation could be interpreted as a claim that the cleanliness concerns which Clements stated as the reason for plaintiff's termination were an unfounded pretext for gender discrimination, plaintiff's briefing makes clear that this is no longer, if it ever was, her exact contention. For example, Ms. Jenkins' response brief admits that she "was terminated for failing to perform her job as the Third Shift Sanitation Supervisor, after receiving numerous warnings." (Def's und. fact no. 22.) She admits that the warnings included "perhaps as many as 100 memos -- regarding things that were not getting done on her shift" and that "[o]ften times the memos addressed areas of the plant that were routinely dirty when production began." (Def's und. fact no. 7.) It is undisputed that plaintiff had been warned twice, in writing, by Mr. LeFlore,[2] that failure to improve her job performance could result in a change, or words to that effect. (Def's und. fact nos. 8,

---

[2]Although not the subject of a proposed undisputed fact, Mr. LeFlore's affidavit, attached to defendant's moving brief as Ex. no. 3, at ¶ 1, states that he is the Director of Purchasing and Manufacturing at Clements Food Company and that the plant Shift Supervisors report directly to him.

11.)  And, it is undisputed that an area of repeated concern had been cleanliness problems with the syrup line, and that on the Monday before she was terminated plaintiff had been asked to take special steps to clean the syrup line so that the plant could be ready for Betty Crocker production on that Wednesday.  (Def's und. fact nos. 10, 19.)  Furthermore, plaintiff's affidavit (found in her response brief, at Ex. 1, ¶ 3) states that Clements had  "the *mistaken* belief that the production line was not clean" at the time she was terminated.  (Emphasis added.)  Although plaintiff argues that other crews were "also responsible for the clean up of the particular production line," that "the production line machine was clean on that day," and that "Plaintiff was terminated and no other Supervisors (male) received any discipline," (response brief, p. 5, argument unsupported with any citations to evidence),  plaintiff's affidavit never directly asserts that Clements' "mistaken belief" was not a good faith belief on Clements' part.  Finally, plaintiff does not dispute defendant's characterization of her complaint as follows: "Jenkins complains that instead of termination, she should have been allowed to return to her job in the lab.  She claims another 'supervisor' was allowed to return to his previous job as a forklift operator, rather than face termination."  (Def's und. fact no. 23.)  (The male employee who is the subject of def's und. fact no. 23 is Eugene Webster, discussed later in this Order.)  All of which is a long way of saying that, based on plaintiff's theory of the case as  clarified in her briefing, the second way in which she contends Clements discriminated against her due to her gender was by Clements' terminating her instead of returning her to her former non-supervisory job, after plaintiff's work performance as a supervisor was found to be inadequate.[3]

---

[3]Out of an abundance of caution the court also finds that if it misunderstands plaintiff's specific contention and she *does* intend to argue that defendant was motivated by her gender when
(continued...)

## Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

## Discussion

### 1. State Law Cause of Action

This Order takes up defendant's final argument first, which is that there is no private cause of action under Oklahoma law for gender discrimination. Plaintiff appears to allege her state law discrimination claim under 25 O.S. § 1901, which is

---

[3](...continued)

it found that she did not perform her job adequately (either on the day she was terminated or at any other time), then defendant would be entitled to summary judgment on that aspect of plaintiff's claim. The court reaches this conclusion based on the undisputed facts and evidence reviewed in this Order, including the finding that there is no evidence of pretext; there is no evidence to support such a claim.

cited in ¶ 16 of the Complaint and which is a statute entitled "Discrimination on Grounds of Handicap."  The Complaint also references "a violation of Oklahoma public policy," (Complaint at ¶ 15), so plaintiff may have also intended to allege gender discrimination as the basis of a wrongful termination claim.  Either way, no state law claim is viable.  The only type of discrimination claims which give rise to a private cause of action under the Oklahoma Anti-Discrimination Act are handicap discrimination claims.  *See*, Tate v. Browning-Ferris, 833 P.2d 1218, 1229 (Okla. 1992) (Oklahoma's anti-discrimination act, 25 O.S. § 1101 et seq., does not provide a private right of action to a person aggrieved by racially discriminatory practices, in contrast, it does afford a private right of action for discrimination based on handicap). Plaintiff's federal remedies under Title VII are adequate so that she does not have a wrongful discharge claim based on gender discrimination.  *See*, Clinton v. State ex rel. Logan County Elec. Bd., 29 P.3d 543, 546 (Okla. 2001) (when an employer discharges a terminable at will employee based on the employee's status and the reason for the discharge violates Oklahoma's clear and compelling public policy, but the employee has an adequate federal statutory remedy for the wrongful discharge, that employee may not also bring a tort claim under Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989)).  Regardless, plaintiff's briefing does not address defendant's arguments regarding the inadequacy of any state law claim which plaintiff may have intended to allege, and the court finds that it is appropriate to deem those arguments confessed.  *See*, LCvR7.2(f).

For these reasons, the court finds and concludes that Clements is entitled to summary judgment in its favor on plaintiff's state law claim of gender discrimination which is alleged in Count II.

## 2.  Clements' Decision Not to Allow Plaintiff
## to Participate in Hiring

The other argument in defendant's moving brief which plaintiff does not respond to in any meaningful way is defendant's contention that the decision to discontinue plaintiff's participation in the hiring process for her crew was neither discriminatory nor an adverse employment action within the meaning of Title VII.[4]

With respect to the first point, it is undisputed that six months before plaintiff's termination, Mr. LeFlore told plaintiff that another shift supervisor who worked days would be hiring crew members for the third shift (which was the night shift that plaintiff supervised), because it was easier to interview and make hiring decisions during daytime hours.  (Def's und. fact no. 3.)  It is also undisputed that shortly after that time, Mr. LeFlore and Deneise Klause, the human resources director, determined that no plant supervisors, regardless of their shift, would conduct interviews alone or make hiring decisions and that, from that point forward, Ms. Klause would handle hiring duties.  (Def's und. fact no. 4.)  There is no evidence and there are no inferences to suggest that these stated reasons for discontinuing plaintiff's authority to make

---

[4]Plaintiff's response brief states that "As a female supervisor, after a period of time, Plaintiff was not allowed to hire her own staff for the crew of employees she supervised, while other supervisors (male) were allowed to hire their own crews."  (Response brief, p. 5.)  While this statement might be enough to generally take issue with defendant's position, it is merely conclusory and plaintiff presents no argument to back it up.  For example, plaintiff has presented no evidence regarding which, if any, male supervisors were allowed to hire their own crews after plaintiff was no longer allowed to participate in hiring decisions, and there is no evidence of pretext.  Plaintiff has not responded at all to defendant's position that depriving an employee of hiring authority is not an adverse employment action within the meaning of Title VII.

hiring decisions were discriminatory or that they were a pretext for gender discrimination.[5]

Moreover, a decision to discontinue participation in hiring decisions is not an adverse employment action within the meaning of Title VII, and plaintiff has not argued otherwise.   Although the Tenth Circuit defines the phrase "adverse employment action" liberally, a mere inconvenience or an alteration of job responsibilities, such as occurred here when plaintiff's hiring input was taken away, is not sufficient. *See, e.g.*, Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) (reassignment to another school which resulted in a significantly longer commute not an adverse employment action).

Either of these arguments, standing alone, would require summary judgment in defendant's favor on the aspect of plaintiff's claim which contends that Clements discriminated against her when it discontinued her participation in hiring decisions concerning her crew.   Moreover, as already stated, these arguments have not been responded to and the court finds it appropriate to deem them confessed.   The court finds and concludes that defendant is entitled to summary judgment on this aspect of plaintiff's gender discrimination claim.

### 3.  Title VII Claim Based on Clements' Decision to Terminate Plaintiff Rather than Transfer Her Back to Her Former Non-Supervisory Job

The court's rulings to this point leave only one aspect of one claim remaining to be addressed in this Order, that is, plaintiff's Title VII claim based on her

---

[5]Also see the discussion in this Order, *infra* at p.15, regarding the insufficiency of other evidence identified by the plaintiff (such as a letter from the Department of Labor and certain memoranda) to create genuine issues of material fact regarding pretext.

contention that Clements discriminated against her because of her gender when it terminated her for performance problems rather than returning her to her former non-supervisory job in the lab.

Plaintiff relies on circumstantial evidence to establish her sex discrimination claim so the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. *See*, Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (applying burden-shifting in a Title VII and Age Discrimination in Employment Act case). When a plaintiff's prima facie proof is challenged by a properly supported motion, this three-step analysis first requires plaintiff to prove a prima facie case of discrimination.[6] *Id*. The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination. Plotke v. White, 405 F.3d 1092, 1100 (10th Cir. 2005). If plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id*. If the defendant does so, the plaintiff must either show that her gender was a determinative factor in the defendants' employment decision, or show that the defendants' explanation for its action was merely a pretext. Garrett, 305 F.3d at 1217, describing McDonnell Douglas test.

---

[6]Plaintiff need not actually "prove," "show," or "establish" anything to defeat defendants' motions. Plaintiff must merely demonstrate the existence of a genuine issue of material fact. Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage. Goodwin v. General Motors Corporation, 275 F.3d 1005, 1011 at n.7 (10th Cir. 2002) (abrogated on other grounds.).

Defendant has not argued that plaintiff cannot establish a prima facie case, and so the court begins its <u>McDonnell Douglas</u> analysis with a discussion of whether Clements has articulated a non-discriminatory reason for its conduct.

It is undisputed that after plaintiff's termination, when she inquired of the human resources director, Deneise Klause, about a possible return to her former lab position, Ms. Klause informed plaintiff that she should speak to Mr. LeFlore about returning to the lab but that plaintiff declined to speak to Mr. LeFlore about this request.  (Def's und. fact no. 27.)  This undisputed fact is consistent with plaintiff's deposition testimony in which she testified: "I do remember bringing up why couldn't I have went back to the lab, and [Ms. Klause] made a comment, 'Why don't you ask them?'  I said, 'No, just forget it.'  I believe that's what I said.  Because they had already let me go.  They already told me to get my things and leave.  I couldn't go back in there and say anything about lab, but they never give me that opportunity to go anywhere else."  (Plaintiff's depo. p. 142, response brief at Ex. 13.)  Thus, the first non-discriminatory reason articulated by defendant as to why plaintiff was not allowed to return to her job in the lab rather than be terminated, is that plaintiff did not pursue such a request with Mr. LeFlore.

Second, Ms. Klause and Mr. LeFlore testified in their depositions to the effect that in the circumstances of this case neither of them thought it would have been a good idea to return plaintiff to her hourly pay job in the lab after she had been terminated from her supervisory position.  Mr. LeFlore testified that, "Frankly it's not a good idea to involuntarily demote somebody, particularly somebody who's been elevated to the position of a supervisor, back to an hourly job.  I mean, it's  very -- it's not good business.  And I'm not sure -- I'm really not sure she -- I never got the impression she was interested in doing that, she never mentioned it to me that, 'Hey,

you know, what about my old job?' or that kind of thing.  But I felt like, under the circumstances, it probably would not have been a good idea [to return her to her old job] because...she felt, I'm sure to this day, that she did a great job and she would have had to of interpreted such a move...in a negative way."  (LeFlore depo., p.63, response brief at Ex. 11.)  Ms. Klause testified similarly that, "Well, actually I agree with Louis [LeFlore], I think it's -- when you demote a supervisor, I think it's very demoralizing for the other people.  I think they see an angry person coming to work every day, and I think that person is going to talk badly about the company, thinking they got a raw deal.  I think it is a bad -- in this situation, I think it would have been a bad idea to put her back to work."  (Klause depo., p. 20, response brief at Ex. 12.)  Thus, Mr. LeFlore and Ms. Klause have each articulated concerns about employee morale, negativity and employee bad-mouthing which might have occurred in this particular situation, had plaintiff been returned to her former non-supervisory job in the lab after her poor performance as a supervisor.

Third, it is undisputed that in May of 2004, when plaintiff was terminated, there were no job openings in the Clements laboratory where plaintiff had previously worked.  (Def's und. fact no. 28.)

Accordingly, the court finds and concludes that Clements has articulated several legitimate, non-discriminatory reasons for not returning plaintiff to her former job instead of terminating her.  This brings the court to the critical question with respect to defendant's motion, which, as the parties appear to agree, is whether there is any evidence tending to show  pretext.

A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them

unworthy of credence.  Green v. New Mexico Dept. of Labor, 420 F.3d 1189, 1192-93 (10th Cir. 2005), citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Although a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual, pretext is typically shown in one of three ways:  with evidence that the defendant's stated reason for the action was false;  with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, or with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice.  Id. at 1193.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that she was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.  Id.

The primary argument which Ms. Jenkins offers to suggest pretext is her contention that the company's treatment of another similarly situated employee, Eugene Webster, was different from its treatment of Ms. Jenkins.  Defendant does not dispute that Mr. Webster was allowed, by mutual agreement, to return to his job as a forklift operator when he had performance problems as a shift leader.  (Discussion in reply brief, p. 3, based on revised Klause aff., Ex. 3, ¶ 12 reply brief;  factual contention that Mr. Webster was not terminated but was allowed to return to his old job by mutual agreement not disputed by plaintiff in sur-reply brief.)  Although plaintiff admits that Mr. Webster was never a shift supervisor and was not similarly situated to plaintiff, (def's und. fact no. 24), her briefing proceeds to argue -- inconsistently with these undisputed facts -- that employees are similarly situated if they have the same supervisor and are governed by the same company rules.  Thus, plaintiff's response brief tries to argue that Clements had a company-wide policy

which provided that a supervisor should not be demoted and returned to a line worker or hourly-wage type of job.  (Response brief, pp. 9-10.)  Regardless of the fact that plaintiff's admission that Mr. Webster was not similarly situated renders the company-wide policy question immaterial, the court finds that there is, in any event, no evidence of any company-wide policy at Clements.  The deposition testimony of both Mr. LeFlore and Ms. Klause (already quoted in this Order), indicates only those individuals' personal views about business concerns which they would have had in the event plaintiff had pursued a request to return to her non-supervisory job at the time of her termination.[7]  Nor is there any evidence of a written company policy on this subject.  Lacking evidence of a company-wide policy, there is no reason to exempt plaintiff from the usual rule that to be similarly situated with another employee, she and the other employee must share the same supervisor.  As that rule is stated in <u>Green</u>, 420 F.3d at 1194, "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline."  Here, it is undisputed that Ms. Jenkins and Mr. Webster did not share the same supervisor and that Mr. LeFlore was not in Mr. Webster's chain of command. (Discussed in reply brief at p. 10, and see Webster aff. and Williams aff., attached to reply brief as Ex. nos. 1, 2.  The contention that Mr. LeFlore was not in Mr. Webster's chain of command is not disputed in plaintiff's sur-reply brief.)

---

[7]Plaintiff argues in her sur-reply brief that because these witnesses were Rule 30(b)(6) designees, they were not testifying about their personal concerns but about company-wide policy. Nothing prohibits a witness designated under Rule 30(b)(6) from also testifying about their personal views.  Not only does the testimony in question make clear that each of the deponents are stating their personal views, even if these personal views were somehow interpreted as constituting company-wide policy, the expressed views are limited to concerns about returning a supervisory employee in plaintiff's circumstances to a former job.  Neither deponent discussed any rules, concerns, or policies which might have applied beyond plaintiff's individualized circumstances.

Even if the same-supervisor rule did not apply here, or even if it should be relaxed for some reason, there are additional reasons why plaintiff has failed to identify any evidence that she and Mr. Webster were similarly situated employees. Other than the fact that both plaintiff and Mr. Webster had performance problems, there is no evidence comparing these two employees and none from which to make a meaningful comparison of these two employees' work histories.  There is no meaningful evidence regarding the nature of the performance problems which Mr. Webster had, or the frequency of those problems, or whether he had received warnings similar to those Ms. Jenkins had  received prior to his transfer back to the forklift job. The only evidence which even touches upon this subject is an undisputed conclusory statement by Ms. Klause that  "Mr. Webster's performance issues were not as pervasive or frequent as Plaintiff's performance lapses." (Discussed in reply brief p. 10, Ex. 3 ¶ 15;  undisputed in plaintiff's sur-reply brief.)

Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly situated.  Green, 420 F.3d at 1194.  This type of comparative evidence is especially critical when the issue is whether plaintiff should be returned to her former job and where she admits that she had possibly as many as 100 memos regarding things which were not getting done on her shift, many of which pertained to cleanliness, a matter of extreme importance to a food company, and potentially, to the public as well.

Faced with a lack of comparative data, plaintiff attempts to create an issue of fact regarding whether or not Mr. Webster was a supervisor, however, even if this

court were to find that a fact question existed regarding that issue, which it does not,[8] that issue is immaterial here, where Mr. Webster and plaintiff had different supervisors, where there is no evidence of a company-wide policy regarding the transfer of non-performing supervisors, where there is no evidence that Mr. Webster and plaintiff had similar work histories, and where plaintiff has admitted (in response to def's und. fact no. 24) that Mr. Webster was not similarly situated to plaintiff and that he was a shift leader, not a supervisor.

Besides plaintiff's inconsistent admissions and arguments concerning whether or not Mr. Webster was a similarly situated employee, the only other items which plaintiff proposes as evidence of pretext -- such as a letter from the Department of Labor, a January 28, 2003 memo, an April 21, 2004 memo -- are immaterial. Accordingly, the court finds and concludes that there is no evidence of pretext and that defendant is entitled to summary judgment on Ms. Jenkins' claim that it was gender discrimination to terminate Ms. Jenkins following performance problems as supervisor rather than to return her to her former non-supervisory job in the Clements' lab, a matter which Ms. Jenkins has testified she never took up with Mr. LeFlore despite her testimony that Ms. Klause advised her to do so.

---

[8]There is some evidence that Mr. Webster wore a supervisor's uniform, disputed evidence that he may have held himself out as a supervisor, and evidence that he received copies of certain memoranda; plaintiff also states that Mr. Webster made more money than she did, a statement which defendant has explained by the undisputed fact that Mr. Webster was an hourly employee earning overtime whereas plaintiff was a salaried supervisory employee. (Ex. nos. 3,4, to defendant's reply brief.) Considering the undisputed facts and evidence described in the text, the court finds that none of this evidence creates a genuine issue of material fact regarding whether Mr. Webster was a supervisor or a similarly situated employee.

Conclusion

Having carefully considered the parties' submissions, the record, the pleadings, and the relevant authorities, the court determines that Defendant Clements Foods Co. is entitled to summary judgment on all claims alleged in this action.  Defendant's Motion for Summary Judgment is therefore **GRANTED**.  (Doc. no. 36)

This ruling  moots the other motion which is also pending, plaintiff's "Motion for Partial Summary Judgment," filed September 1, 2005.  In that motion, plaintiff seeks summary judgment in her favor on two of defendant's affirmative defenses. Plaintiff's motion for partial summary judgment is **STRICKEN** as moot.  (Doc. no. 35.)

Dated this 19th day of October, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1113p012(pub).wpd

-15-